**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| L.B., a minor, by and through his or her legal guardian, MOLLY JANIK, individually, and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | |
| TIKTOK, INC., and BYTEDANCE, INC., | |
| Defendants. | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff L.B., a minor, by and through his or her legal guardian, MOLLY JANIK, individually, and on behalf of all others similarly situated, by and through counsel, brings this action against Defendants TIKTOK, INC. and BYTEDANCE, INC. (collectively "Defendants"), and alleges as follows based on information and belief, except as to allegations specifically pertaining to Plaintiff, which are made upon personal knowledge:

### INTRODUCTION

1.      Defendants own and operate the popular video-sharing social media application "TikTok," an app that allows users to make and share short videos.

2.      Despite only becoming available in the United States in late 2018, TikTok was the seventh most-downloaded app of the 2010s,[1] and was the most-downloaded app in the United States in January 2020, having been downloaded 7.7 million times that month.[2]

---

[1] *See* Alison DeNisco Rayome, *10 Most-Downloaded Apps of the 2010s: Facebook Dominates the Decade*, CNET (Dec. 16, 2019), available at: https://www.cnet.com/news/10-most-downloaded-apps-of-the-decade-facebook-dominated-2010-2019.

[2] *See TikTok is No. 1! Beats Facebook, Instagram to Become Most Downloaded App in US*, BUSINESS TODAY (Feb. 27, 2020), available at: https://www.businesstoday.in/latest/trends/tiktok-is-no1-beats-facebook-instagram-to-become-most-downloaded-app-in-us/story/397056.html

3.      TikTok is especially popular with teenagers and young adults.  Approximately half of all users on Apple devices, and approximately 60% of users on Android devices, are between 13 and 24 years old.[3]

4.      Part of the reason for TikTok's popularity, particularly with younger users such as Plaintiff, are the filters and other effects users can apply to their own videos, as well as those uploaded by others. In order to utilize many of these effects, Defendants scan users' faces and "face geometry" to capture their biometric data, as well as to determine the user's age using an algorithm.

5.      In collecting and utilizing Plaintiff's and the Class' biometric identifiers[4] and biometric information[5] (referred to collectively at times as "biometrics"), Defendants fail to: (1) warn users that the app captures, collects, and stores their biometric data; (2) inform users of the purpose or length of time that they collect, store, and use biometric data; (3) obtain users' written consent to capture their biometric data; and (4) implement and/or make publicly available a written policy disclosing to users its practices concerning the collection, use, and destruction of their biometric information in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*

6.      The Illinois General Assembly found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual

---

[3] *See* Sahil Patel, *Hearst now has both Seventeen and Cosmo on up-and-coming app Musical.ly*, DIGIDAY (Mar. 7, 2018), available at: https://digiday.com/media/seventeen-hearst-brings-cosmopolitan-musical-ly.

[4] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry", among others. *See* 740 ILCS 14/10.

[5] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual. *See* 740 ILCS 14/10.

has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

7.     In recognition of these concerns over the security of individuals' biometrics, the Illinois General Assembly enacted BIPA, which provides, *inter alia*, that private entities like Defendants may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored, *see id.* at 14/15(b); (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used, *see id.*; (3) receives a written release from the person for the collection of his or her biometric identifiers or information, *see id.*; and (4) publishes publically available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, *see* 740 ILCS 14/15(a).

8.     Accordingly, Plaintiff, individually, and on behalf of all others similarly situated, brings this action to enjoin, and recover damages stemming from, Defendants' BIPA violations.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005, because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants because Defendant ByteDance is registered to do business in Illinois, Defendants have purposefully availed

themselves of the benefits and protections of Illinois by continuously and systematically conducting substantial business in this judicial district, and have significant, continuous, and pervasive contacts with the State of Illinois. Plaintiff's cause of action arises out of Defendants' contacts with the State of Illinois.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this District, are subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

12. Plaintiff L.B., a minor, is and was at all relevant times an Illinois resident. Plaintiff's Guardian, MOLLY JANIK, was also, at relevant times, and is through the date of this filing an Illinois resident. Defendants scanned Plaintiff's facial geometry through Plaintiff's use of the TikTok app.

13. Plaintiff L.B. is a 17-year-old minor and has, within the applicable statute of limitations, uploaded and posted videos to TikTok that include images of his or her face, and his or her face has appeared in other users' uploaded videos. Plaintiff has uploaded videos, and/or Plaintiff's face has appeared in videos uploaded by other users, employing TikTok's face sticker, face filter, and face tracker lens technology.

14. Through these videos, Defendants have collected and stored Plaintiff's unique biometric identifiers or biometric information. Upon information and belief, Defendants have disclosed and/or disseminated these biometric identifiers or biometric information to third parties.

15. Defendant BYTEDANCE, INC. is a Delaware corporation with its principal place of business located at 3000 El Camino Real, Building 2, Suite 400, Palo Alto, California 94306.

4

16.     Defendant TIKTOK, INC. is a California corporation with its principal place of business located at 5800 Bristol Pkwy, Culver City, California 90230.

## GENERAL FACTUAL ALLEGATIONS

*Illinois Biometric Information Privacy Act*

17.      The global market for biometric technologies is growing at an exponential rate due to the increasing penetration of biometric-enabled consumer devices such as smartphones, tablets, speakers, and applications among consumers worldwide.

18.     Biometrics also have become an integral part of application-based entertainment. Hundreds of smartphone apps utilize augmented reality (AR) technology to enhance the user experience, and apps that allow users to experience or add AR-related visual effects to photographs and videos utilize biometric identifiers such as scans of users' face geometry in connection with those features.

19.     Despite the growing use of biometrics, "the full ramifications of biometric technology are not fully known." 740 ILCS 14/5(f).

20.     As such, the Illinois Legislature enacted BIPA in 2008 to regulate the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information[,]" 740 ILCS 14/5(g), which includes a "scan of . . . face geometry." 740 ILCS 14/10.

21.     Biometric information includes "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

22.     BIPA requires that any private entity in possession of biometric identifiers or biometric information develop and make publicly available a written policy regarding the retention and permanent destruction of biometric identifiers and biometric information. Biometric

identifiers and biometric information must be permanently destroyed "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

23. BIPA further obligates any private entity that collects, captures, purchases, receives, or otherwise obtains a person's biometric identifiers or biometric information, first to 1) inform the person or their legally authorized representative that biometric identifiers or biometric information is being collected; 2) inform the person or their legally authorized representative of the specific purpose and length of time that the biometric identifiers or biometric information is collected, stored, and used; and 3) obtain written consent from the person or their legally authorized representative to collect, capture, receive, store, and use the person's biometric identifiers or biometric information, 740 ILCS 14/15(b), and to store, transmit, and protect from disclosure biometric identifiers or information in conformity with the reasonable standard of care for the industry, and in the same or more protected manner that it stores, transmits, and protects other confidential and sensitive information. 740 ILCS 14/15(e).

24. BIPA also prohibits private entities from selling, leasing, trading, or otherwise profiting from, 740 ILCS 14/15(c), and from disclosing, redisclosing, or otherwise disseminating a person's biometric identifiers or biometric information without obtaining informed, written consent from that person or their legally authorized representative. 740 ILCS 14/15(d)(1).

25. In recognition of the sanctity and critical importance its citizens' biometric information, the Illinois General Assembly expressly authorized a private right of action for any person aggrieved by a violation of BIPA, and entitles the party to recover 1) the greater of actual damages or $1,000 per negligent violation; 2) the greater of actual damages or $5,000 per

intentional or reckless violation; 3) attorneys' fees and costs; and 4) injunctive relief. 740 ILCS 14/20.

***The TikTok App***

26.     TikTok, originally called Douyin, is an app created by ByteDance and first made available in China in 2016.

27.     In November 2017, ByteDance purchased the app "musical.ly" for more than $1.1 billion. Musical.ly, which was a social media application that allowed users to share short lip-synching videos, was first available in the United States in 2014. In 2018, Defendants merged the TikTok and musical.ly apps into a single application under the TikTok name.

28.     In order to create and send videos, an individual must create a TikTok profile. In order to create a TikTok profile, the user must register the profile using either his or her phone number or email address, or through the user's Facebook, Google, or Twitter account.

29.     Users can create videos up to 1 minute in length, and share the videos with other users through the TikTok app.

30.     By default, TikTok profiles are set to "public," which allows anyone to see the user's profile, username, and videos. Users can set their TikTok profile to "private" to ensure their private profiles and videos do not appear in searches of TikTok content. However, a user with a private profile may access all of TikTok's functions and features, and can share videos directly with friends through the app.

31.     Users also may utilize numerous features, or "effects," that Defendants made available within the application. The features and effects for videos range from simply slowing the speed of the video, to replacing the user's face with animated emojis that replicate the motions of the user's face.

32.     Many of the features and effects require scanning the user's face geometry in order to place effects over the user's face, swap the user's face for an emoji or other individual's faces, or enhance aspects of their facial features.

33.     But Plaintiff and similarly situated users place themselves at risk when they utilize TikTok features that require access to users' biometric identifiers and/or information. TikTok acknowledges that it shares personal information that it collects from users with third parties, including entities in China.[6] Multiple U.S. military branches and the Transportation Security Administration have banned use of TikTok due to privacy and cybersecurity concerns.[7]

34.     TikTok, and its predecessor musical.ly, also have a long history of exploiting the millions of minors that make up the lion's share of TikTok's user base.  In 2019, the Federal Trade Commission settled a case against TikTok and musical.ly for violating the Children's Online Privacy Protection Act by improperly collecting personal information from children under 13 years old without their parents' consent.[8]  The FTC fined Defendants $5.7 million, the largest COPPA fine in the FTC's history.

35.     In response to complaints regarding children under 13 years old using the app, TikTok implemented a feature that scans the user's face to determine if he or she appears to be 13 years old or younger. TikTok compares the geometry and features of the individual's face to an algorithm to determine his or her age.

---

[6] *See* Rebecca Jennings, *What's going on with TikTok, China, and the US Government?*, VOX (Dec. 16, 2019), available at: https://www.vox.com/open-sourced/2019/12/16/21013048/tiktok-china-national-security-investigation.
[7] *See* Mary Meisenzahl, *US Government Agencies are Banning TikTok, the Social Media App Teens are Obsessed with, over Cybersecurity Fears*, BUSINESS INSIDER (Feb. 25, 2020), available at: https://www.businessinsider.com/us-government-agencies-have-banned-tiktok-app-2020-2.
[8] *See* Lesley Fair, *Largest FTC COPPA Settlement Requires Musical.ly to Change its Tune*, FEDERAL TRADE COMMISSION (Feb. 27, 2019), available at: https://www.ftc.gov/news-events/blogs/business-blog/2019/02/largest-ftc-coppa-settlement-requires-musically-change-its.

36.     Additionally, many of TikTok's features and video effects require scanning the user's face to superimpose filters or effects over the user's face.  For example, by scanning the user's face, TikTok can replace the user's face with an emoji that moves the emoji's mouth when the user talks and blinks when the user blinks, swap a user's face with another user's face, or place digital stickers over the user's face that move when the user moves.

37.     Defendants collect, capture, and otherwise obtain Plaintiff's and Class members' biometric identifiers and biometric information in connection with these practices.

38.     In contravention of BIPA, however, Defendants failed and continue to fail to implement and/or make publicly available a written policy regarding the purpose(s) for which they collect or obtain users' biometric identifiers or biometric information, or their schedule for the retention and permanent destruction of users' biometric identifiers or biometric information.

39.     Defendants also failed and continue to fail to inform users that Defendants collect, capture, obtain, use, and store users' biometric identifiers and biometric information, as well as the specific purpose and length of time for which they collect, store and use biometric identifiers or biometric information.

40.      Critically, Defendants also failed and continue to fail to obtain from users written executed releases permitting them to collect, capture, obtain, use, or store their biometric identifiers or biometric information.

41.     On information and belief, Defendants sell, lease, trade, or otherwise profit from users' biometric identifiers or biometric information.

42.     On information and belief, Defendants share, disclose, or otherwise disseminate users' biometric identifiers or biometric information to third parties without obtaining consent from users to do so.

9

43.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered damages, including but not limited to, the unauthorized collection, use, disclosure, and dissemination of their personal biometric identifiers or biometric information; the loss of the right to maintain and control their biometric privacy; and the increased risk of identity theft.

## CLASS ALLEGATIONS

44.    Plaintiff brings this action, individually, and on behalf of a class of similarly situated Illinois residents, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

> All Illinois residents who created a TikTok or musical.ly account, or who used the TikTok or musical.ly applications, when 14 to 17 years old, and their parents and/or legal guardians.

45.    Excluded from the Class(es) are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

46.    **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Plaintiff believes, and on that basis alleges, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on Defendants' records.

47.    **Commonality**: Common questions of law and fact exist as to all members of the Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a. Whether Defendants collect, capture, or otherwise obtain Plaintiff's and Class members' biometric identifies or biometric information;

b. Whether Defendants inform Plaintiff and Class members that they capture, collect, or otherwise obtain their biometric identifiers or biometric information;

c. Whether Defendants implemented and made public a written policy regarding the collection, retention, and permanent destruction of Plaintiff's and Class members' biometric identifiers and biometric information;

d. Whether Defendants inform Plaintiff and Class members of the specific purpose and length of time that their biometric identifiers or biometric information is collected, used, or stored;

e. Whether Defendants obtained a written executed release from Plaintiff and Class members to collect, capture, use, store, share, disclose, or otherwise disseminate their biometric identifiers or biometric information;

f. Whether Defendants intentionally or recklessly violated the provisions of BIPA; and

g. Whether Plaintiff and Class members are entitled to declaratory and injunctive relief to enjoin Defendants' violations of BIPA.

48. **Typicality**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out Defendants' uniform conduct.

49. **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and counsel will fairly and adequately protect the interests of the Class.

50. **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would

11

be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

51.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

**COUNT I**
**VIOLATION OF THE BIOMETRIC PRIVACY INFORMATION ACT**
**740 ILCS 14/1, *et seq.***

52.     Plaintiff realleges and incorporates by reference all paragraphs as through fully set forth herein.

53.     Each Defendant is a "private entity" under BIPA. 740 ILCS 14/10.

54.     Defendants collected, captured, or otherwise obtained Plaintiff's and Class members' biometric identifiers and/or biometric information through the TikTok app.

55.     Defendants failed and continue to fail to implement and make publicly available a written policy regarding a retention schedule and guidelines for the permanent destruction of Plaintiff's and Class members' biometric identifiers or biometric information.

56.     Defendants failed and continue to fail to inform Plaintiff, Class members, or their legally authorized representatives in writing that Plaintiff's and Class members' biometric identifiers and biometric information are being collected or stored.

12

57.     Defendants failed and continue to fail to inform Plaintiff, Class members, or their legally authorized representatives of the specific purpose and length of time that Plaintiff's and Class members' biometric identifiers and biometric information are being collected, store, and used.

58.     Defendants failed and continue to fail to obtain a written executed release from Plaintiff, Class members, or their legally authorized representatives to collect Plaintiff's and Class members' biometric identifiers and biometric information.

59.     Defendants disclosed or otherwise disseminated Plaintiff's and Class members' biometric identifiers and biometric information without obtaining Plaintiff's, Class members', or their legally authorized representatives' consent to disclose or disseminate Plaintiff's and Class members' biometric identifiers and biometric information.

60.     On information and belief, Defendants intentionally and/or recklessly violated the provisions of BIPA.

61.     As a direct and proximate result of the foregoing, Plaintiff and Class members suffered and will continue to suffer damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf the Class, respectfully requests that the Court:

A.      Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.      Appoint Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

C.      Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.      Award pre-judgment and post-judgment interest on such monetary relief;

E.   Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to refrain from capturing, collecting, using, storing, disclosing, or disseminated Plaintiff's and Class members' biometric identifiers or biometric information without obtaining their express written consent, and permanently destroying Plaintiff's and Class members' biometric identifiers and biometric information;

F.   Award reasonable attorney's fees and costs; and

G.   Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of the putative Class, demands a trial by jury on all issues so triable.

Dated: May 13, 2020                    Respectfully submitted,

*/s/* Daniel O. Herrera
Jennifer W. Sprengel
Daniel O. Herrera
Nickolas J. Hagman
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Telephone: 312-782-4880
Facsimile: 318-782-4485
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

14